## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| BRANDY SUCKLEY, REANNAN SUCKLEY, JYL ALBERTSON, MATHEW BAUMSTARK, DANIKA OWAN, LYNETTE COLE-PEREA, MANUEL PEREA, and EMILY HOLLY,<br><br>   Plaintiffs,<br><br>v.<br><br>THE CITY OF WILLISTON, NORTH DAKOTA,<br><br>   Defendant. | Case No. 21-cv-00012-CRH<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |

## STATEMENT OF MATERIAL FACTS

Pursuant to L.R. 7.1 and Rule 56(c) of the Federal Rules of Civil Procedure, Plaintiffs set forth their uncontested Statement of Material Facts ("SOF") in which there is no genuine issue to be tried:

**Williston's Pit Bull Ban**

1. Williston City Code of Ordinances § 4-89 (the "Pit Bull Ban") bans the possession of "any pit bull dog" within the city limits of Williston, North Dakota. Ex. A, Williston City Code § 4-89.

2. "Pit bull dog" is defined as:

  (a) The bull terrier breed of dog.

  (b) Staffordshire bull terrier breed of dog;

  (c) The American pit bull terrier breed of dog;

(d) The American Staffordshire terrier breed of dog;

(e) Dogs of mixed breed or of other breeds than above listed which breed or mixed breed is known as pit bulls, pit bull dogs or pit bull terriers;

(f) Any dog which has the appearance and characteristics of being predominantly of the breeds of bull terrier, Staffordshire bull terrier, American pit bull terrier, American Staffordshire terrier, any other breed commonly known as pit bulls, pit bull dogs or pit bull terriers, or a combination of any of these breeds.

*Id.*

**Training to Enforce the Pit Bull Ban**

3.  Williston Community Service Officers ("CSOs")[1] enforce Section 4-89.  Ex. B, Defendant's Answers to Plaintiffs' First Set of Interrogatories, Interrogatory No. 3.

4.  CSOs rely on a dog's physical appearance to determine whether a dog is subject to the Pit Bull Ban.  Ex. C, Wade Dep. at (59:6–13), Ex. D, Ambrosini Dep. at (38:10–12); Ex. F, Pelzl Dep. at (23:18–23).

5.  Within the field of canine genetics, the unreliability of visual identification to determine the primary breed of a dog of unknown origin is widely accepted. Ex. G, Hekman Dec. at ¶ 5; *Id.* at Ex. 1 (Hekman Report), p. 1.

6.  The current Williston CSO supervisor is Carli Wade. Ex. C, Wade Dep. at (4:21– 24).

7.  Wade oversees and trains the Williston CSOs she supervises.  *See* Ex. C, Wade Dep. at (4:25–5:6).

---

[1] Around 2020 or 2021 the Williston Police Department combined the parking enforcement and animal control offices, the officers in that department are currently referred to as "Community Service Officers." *E.g.*, Ex. C, Wade Dep. at (6:22–7:4).

8.   Wade has no formal training in visual breed identification and has not attended or sent the CSOs to training involving visual breed identification.  Ex. C, Wade Dep. at (88:7–19; 93:6–8).

9.   The training Wade provided to CSOs to enforce the Pit Bull Ban has generally consisted of riding along with Wade and reviewing a power point presentation Wade created.  Ex. C, Wade Dep. at (28:19–23); Ex. D, Ambrosini Dep. at (15:15–21, 8:17–9:20) (stating that her training consisted of riding along with Carli Wade for approximately a month and a half and going over a power point presentation); Ex. E, Jimenez Dep. at (8:11–10:4) (stating that her animal control training consisted of one ride along with Carli Wade and a power point presentation); Ex. F, Pelzl Dep. at (8:18–9:24) (stating her animal control training was that she would ride along with Carli Wade "every now and then.").

10. The power point presentation Wade created is a total of 64 pages. *See* Ambrosini Dep. Ex. 1. Two pages of the presentation relates to identification of banned breeds under Section 4-98. *Id.* at pp. 52–53.

11.  The first of the two pages provides photograph examples of banned breeds:



*See* Ambrosini Dep. Ex. 1 at p. 52.

12. The second of the two pages provides photograph examples of breeds which are not pit bulls:



*See* Ambrosini Dep. Ex. 1 at p. 53.

**Enforcement of the Pit Bull Ban**

13. When asked what standards or guidelines are used to determine if a dog is a banned breed for purposes of enforcing the Pit Bull Ban, each CSO indicated it was too difficult to describe – "you just know it when you see it." Ex. D, Ambrosini Dep. at (38:21–39:1) (Q: What do you look for when you're examining a dog to determine if it has the physical characteristics of a pit bull or one of the other banned breeds? A: It's difficult to describe, but it – you know it when you see it."); *Id.* at (51:19–52:17; 60:10–14); Ex. E, Jimenez Dep. at (18:10–18) (agreeing with the notion that it's hard to describe how to determine a dog is a banned breed, but you know it when you see it, and stating, "It's really hard to describe.  I – when we see one -- when we see it, we cite for it."); *Id.* at (25:1–26:7); Ex. F, Pelzl Dep. at (25:19–26:6) (Q "When you're looking at a dog . . . are there specific things that you are looking for to determine whether the dog is or  is not one of the banned breeds?" A: "You can't really describe it.  It's just something that you -- you know.").

14. Wade agreed there were no unambiguous standards she applies to determine if a dog is subject to the Pit Bull Ban, but she knows it when she sees it:

> Q:     When you look at a dog to determine whether it is one of the
>          banned breeds, what are you looking for?
>
> **A:     Characteristics.**
>
> Q:     Okay.  So you're looking for physical characteristics of the dog that
>          would indicate to you it's one of the banned breeds?
>
> **A:     Correct.**
>
> Q:     Okay.  And I think what -- what we've heard from all of the other
>          animal control officers is that they can't necessarily describe exactly
>          what it is they're looking for, but they know it when they see it.

**A:**      **Correct.**

Q:      Is that your feeling as well?

**A:**      **Correct.**

Q:      Okay.  Are there -- you know, recognizing that you can't tell me, "This is exactly what I'm looking for," are there certain physical characteristics that you look for?

**A:**      **I just know.  I feel like I just know when I see a pit bull mix.**

Q:      And your feeling that you just know when you see a pit bull mix is based on your general experience with dogs?

**A:**      **Correct.**

Ex. C, Wade Dep. at (59:6–60:2).

15. Each CSO was shown the same array of photographs of dogs along with each dog's DNA breed test results.  *See* Ex. D, Ambrosini Dep. Ex. 6; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3.

16. Wade testified that, without knowing the DNA for the dogs depicted in the photographs, she would cite only one of the dogs as violating Section 4-89. Ex. C, Wade Dep. at (73:14–74:8).

17. A picture of the dog Wade identified as subject to the ban is below:



*Id.*; Ambrosini Dep. Ex. 6 at p.13; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p. 13

18. Looking at the same array of photographs, CSO Pelzl testified there were four dogs she believed might be subject to the ban.  Ex. F, Pelzl Dep. at (31:25–32:14).  Three of the four dogs Pelzl believed may be banned breeds contained no DNA of the breeds enumerated in Section 4-89.  *Id.*; Ambrosini Dep. Ex. 6; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3.

19. The four dogs Pelzl believed might be banned breeds are:








**Zarya**
American Bulldog
100.0% American Bulldog



**Maizie**
Mixed Breed
27.8% Bulldog
27.4% Dalmatian
22.6% Labrador Retriever
22.2% American Bulldog

*See* Ambrosini Dep. Ex. 6 at p. 6;
Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p.
13

*See* Ambrosini Dep. Ex. 6 at p. 7;
Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p. 7.





50.0% Boxer

9.7% Boerboel

8.3% Dalmatian

7.4% German Shepherd Dog

5.2% Pekingese

19.4% Supermutt



**Benny**
Mixed Breed
39.0% American Pit Bull Terrier
28.6% Chihuahua
8.8% German Shepherd Dog
8.0% Boxer
15.6% Supermutt



*See* Ambrosini Dep. Ex. 6 at p. 8;
Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p. 8.

*See* Ambrosini Dep. Ex. 6 at p. 9;
Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p. 9.

*Id.*; Ambrosini Dep. Ex. 6; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3.

20. Looking at the same array of photographs, CSO Ambrosini was not sure if any of the dogs were a banned breed.  *See* Ex. D Ambrosini Dep. at (88:5–91:19).

21. The only dog Ambrosini thought *might* be a banned breed was Maize, whose photo appears in SOF Paragraph 15. *Id.*; Ambrosini Dep. Ex. 6 at p.7; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p. 7.

22. Maize has no DNA of the breeds enumerated in Section 4-89. *See* Ambrosini Dep. Ex. 6 at p.7; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3 at p. 7.

23. Looking at the same array of photographs, CSO Yulissa Jimenez would not cite any of the dogs based on their appearance.  Ex. E, Jimenez Dep. at (39:20–40:4).

24. Eleven of the dogs in the photograph array have at least one banned breed in their DNA breed results.

25. None of the CSOs would cite nine of the eleven dogs with a banned breed in their DNA test results based on the dogs' physical appearance.  *See* Ex. C, Wade Dep. at (73:14–8); Ambrosini Dep. at (88:5–91:19); Ex. F, Pelzl Dep. at (31:25–32:14); Ex. E, Jimenez Dep. at (39:20–40:4); Ex. D, Ambrosini Dep. Ex. 6.

26. For the dogs the CSOs did not visually identify as falling under the ordinance, the CSOs would cite the owner for a violation of Section 4-89 if they knew the dog had a banned breed in its genetic makeup.  *See* Ex. D, Ambrosini Dep. at (50:14–24) (stating she would cite the owner of a dog where only two percent of its DNA was of a banned breed); Ex. F, Pelzl Dep. at (33:17–34:4) (stating she would have to cite a dog with only .001 percent of its DNA from a banned breed); Ex. E, Jimenez Dep. at (34:19–35:23)(agreeing she would cite an owner under Section 4-89 if even one percent of a DNA test came back as a banned breed).

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it can show there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jackson v. Riebold*, 815 F.3d 114, 1119 (8th Cir. 2016); *see also Celotex Corp. v. Catrett*, 317, 322 U.S. 242, 248 (1986) (stating summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."). As the United States Supreme Court has noted, summary judgment is not a "disfavored procedural shortcut." *Celotex*, 477 U.S. at 327. Rather, it is "an integral part of the Federal Rules as a whole." *Id.*

## ARGUMENT

### I.   THE CITY OF WILLISTON'S PIT BULL BAN IS UNCONSTITUTIONALLY VAGUE.

The Pit Bull Ban fails to provide adequate notice of the conduct prohibited by the ban and allows for arbitrary, inconsistent, and discriminatory enforcement. The United States legal system is built on the principle that "laws...must give fair notice of conduct that is forbidden or required." *FCC v. Fox Television Stations, Inc.,* 567 U.S. 239, 253 (2012). "A statute or ordinance violates the Due Process Clause if it fails to 'give fair warning that the allegedly violative conduct was prohibited.'" *Stahl v. City of St. Louis, Mo*., 687 F.3d 1038, 1040 (8th Cir. 2012) (*quoting Qwest Corp. v. Minnesota Pub. Util. Comm'n*, 427 F.3d 1061, 1068 (8th Cir. 2005)). To be constitutional an ordinance must (1) provide adequate notice of the proscribed conduct, and (2) must not lend itself to arbitrary enforcement. *United States v. Barraza*, 576 F.3d 798, 806 (8th Cir. 2009); *see*

*also Geiger v. City of Eagan*, 618 F.2d 26, 28 (8th Cir. 1980) ("Due process has two requirements: that laws provide notice to the ordinary person of what is prohibited and that they provide standards to law enforcement officials to prevent arbitrary and discriminatory enforcement.").

The Pit Bull Ban is unconstitutionally vague because—according to the CSOs charged with enforcing the law—it lacks any articulable standards that (1) inform an individual of ordinary intelligence of the dogs subject to the ban, and (2) invites arbitrary, inconsistent, and discriminatory enforcement. This is especially so for owners of mixed breed dogs that possess physical characteristics associated with multiple breeds. As stated by the CSOs in their depositions, they believe they "know it when they see it," but whatever "it" is varies greatly depending upon the officer that sees it.

### A. The Pit Bull Ban is unconstitutionally vague because it fails to inform a person of ordinary intelligence of the conduct proscribed.

The Williston Pit Bull Ban is unconstitutionally vague because it fails to provide adequate notice of the physical characteristics, particularly of mixed breed dogs, that make an animal subject to the ordinance. "It is a basic principle of due process that an [ordinance] is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972). Without a level of definiteness and specificity, "[v]ague laws may trap the innocent by not providing fair warning." *Id.* at 929, *see also United States v. Nat'l Dairy Prods. Corp*., 372 U.S. 29, 32–33 (1963) ("Void for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed."). When determining whether a statute or ordinance provides fair warning to a person of ordinary intelligence, the court "looks at what a person of 'common intelligence' would

'reasonably' understand the statute to proscribe, not what the particular [individual] understood the statute to mean." *United States v. Washam*, 312 F.3d 926, 930 (8th Cir. 2002), *see also* Cristina D. Lockwood, *Defining Indefiniteness: Suggested Revisions to the Void for Vagueness Doctrine*, 8 CARDOZO PUB. L. POL'Y & ETHICS J. 255, 312 (2010) ("[A]ny legitimate discussion of fair notice within the void for vagueness doctrine must focus on notice to ordinary people, as opposed to 'lawyer's notice.'").

When an ordinance leaves an individual to guess as to its meaning, it fails to adequately inform the public. *United States v. Washam*, 312 F.3d 926, 929 (8th Cir. 2002) (*citing Connolly v. Gen Const. Co.,* 269 U.S. 385, 391 (1926) ("[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.")). The Williston Pit Bull Ban fails to inform ordinary citizens of whether their animal is prohibited.

Plaintiffs recognize that some courts have rejected vagueness challenges to breed specific bans based on the incorporation of American Kennel Club or similar breed standards into the law. And while those standards (which are absent from Williston's ordinance) may be sufficient to allow CSOs or even ordinary citizens to identify dogs which physically resemble *purebred* dogs of an identified breed, they fail to provide clear definitions and fair warning when applied to mixed breed dogs which portray characteristics of multiple breeds. This is especially so when the physical appearance of some non-banned breeds closely resembles the physical characteristics of other banned breeds. The development and proliferation of DNA breed tests now show that a non-banned Bulldog, Dalmatian, Lab mix may look very similar to a potentially banned Pit Bull Terrier, Chihuahua, German Shepard mix. The wide variation in physical

appearance of dogs that contain banned breeds means that many dogs which include a banned breed in their ancestry look very much like dogs that do not and only a little bit like the stereotypical breed standard. And the same is true of many mixed breed dogs with no banned breed in their ancestry. This leads those charged with enforcing the ordinance casting a very wide net.

In *Droll v. City of Keota, Iowa,* the Court upheld a pit bull ban as constitutional because it incorporated by reference the American Kennel Club ("AKC") and United Kennel Club ("UKC") standards. No. 4:20-CV-00088, 2021 WL 7081411 (S.D. Iowa July 30, 2021). There, the Court reasoned that the inclusion of the AKC and UKC standards in the ordinance clearly described the prohibited conduct and "provide[d] fair warning that possession of Pit Bull Breed-looking dogs [was] prohibited." *Id.* at *5. Conversely, in *Am. Dog owners Ass'n, Inc. v. City of Des Moines,* the court found two subsections of an ordinance that banned "vicious dogs" unconstitutionally vague. 469 N.W.2d 416, 418 (Iowa 1991). The first subsection prohibited, "[d]ogs of mixed breed or of other breeds than above listed[2] which breed or mixed breed is known as pit bulls, pit bull dogs or pit bull terriers." *City of Des Moines,* 469 N.W.2d 416, 418 (Iowa 1991) *(quoting* The Municipal Code of the City of Des Moines, Iowa, ch. 7, subch. 2, §§ (vi)-(x)). The second subsection clause prohibited, "any other breed commonly known as pit bulls, pit bull dogs or pit bull terriers, or a combination of any of these breeds." *Id.* There, the Court found that the language of the two subsections left "a reader of ordinary intelligence confused about the breadth of the ordinance's coverage.*" Id.* at 418.

---

[2] The breeds referred to as "above listed" included Staffordshire terrier breed of dog, American pit bull terrier breed of dog, and American Staffordshire terrier breed of dog. The Municipal Code of the City of Des Moines, Iowa, ch. 7, subch. 2, §§ (vi)-(x).

The Pit Bull Ban fails to provide "fair warning" as highlighted by the fact that Williston CSOs testified that even dogs which look nothing like a pit bull are subject to the ban if a DNA test reveals a banned breed (even in de minimis amounts) in their genome. *See e.g.*, Ambrosini Dep. Ex. 6 at pp. 1-5; 10-14; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3, pp. 1-5; 10-14. An owner of a dog like Gamma (pictured below), which appears to be a Cocker Spaniel mix, would be unlikely to assume that she is 21.2% American Pit Bull Terrier and therefore subject to Williston's ban. Ambrosini Dep. Ex. 6 at p. 4; Ex. G, Hekman Dec. at ¶ 9; *Id.* at Ex. 3, p. 4.





Here, the Pit Bull Ban fails to inform an individual of ordinary intelligence of the characteristics that make a dog illegal because it includes dogs like Gamma, which do

not look like a banned breed, and fails to incorporate any unambiguous standards or guidelines applicable to the physical characteristics which make a dog subject to the ban.  Even the officers charged with enforcing the ordinance are unable to articulate anything more than their "feeling" that they "know it when they see it," though they disagree on how the ordinance applies to even a small sample of dogs. The exclusion of an objective standard in the ordinance leaves an individual of common intelligence "to guess at the meaning of the enactment." *Winters v. New York*, 333 U.S. 507, 515 (1948).

### B.  The Pit Bull Ban is unconstitutionally vague because it allows for arbitrary, inconsistent, and discriminatory enforcement.

When an ordinance lacks clear and objective standards, what constitutes a violation becomes a moving target and different enforcement officers will reach different conclusions on how the ordinance should be applied. When an ordinance, "allows subjective determinations based on a choice of nomenclature by unknown persons and based on unknown standards," it is unconstitutionally vague. *Am. Dog owners Ass'n, Inc. v. City of Des Moines,* 469 N.W.2d 416, 418 (Iowa 1991). Enforcement of the Pit Bull Ban is left to the subjective determination of Williston's CSOs who have uniformly adopted an "I know it when I see it" standard.

To avoid this type of arbitrary enforcement, the ordinance "must provide minimal requirements to guide law enforcement in order to prevent police officers, prosecutors, and juries from pursuing their 'personal predilections.'" *United States v. Washam*, 312 F.3d 926, 931 (8th Cir. 2002); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (striking down a law where there was "no standard for determining what a suspect ha[d] to do in order to satisfy the requirement," and finding the law "vest[ed] virtually complete discretion in the hands of the police[.]"); *Grayned v. City of Rockford,* 408

U.S. 104, 109 (1972) ("[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them."); *Papachristou v. City of Jacksonville*, 405 U.S. 156, 170 (1972) ("[Vague standards] furnish[] a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'").

In *Am. Dog Owners Ass'n, Inc. v. City of Lynn*, the Supreme Judicial Court of Massachusetts affirmed the lower court's ruling that a pit bull ban was unconstitutionally vague when the ordinance "failed to provide law enforcement officials with ascertainable standards by which to enforce the ordinance." 404 Mass. 73, 78–79, 533 N.E.2d 642, 646 (1989). There, the lower court found vagueness based on a lack of scientific means to determine whether a dog belongs to a particular breed. *Id*. at 76. The court explained, "[t]hese findings were supported by the testimony of two Lynn dog officers, neither of whom had any training in breed identification and both of whom acknowledged that they necessarily used *subjective standards* to decide whether a particular dog was one of the types covered by the ordinance." *Id*. (emphasis added).

While Williston CSOs may do their best to determine whether a dog is subject to the Pit Bull Ban, without training in breed identification and clear, objective standards to rely on, it is not surprising that officers (a) cannot clearly articulate what they look for to determine if an animal is subject to the ban; and (b) often disagree on whether a dog is subject to the ban. The CSOs' deposition testimony makes clear that each officer enforces the ban based upon their own individual and subjective opinion of what a pit bull or pit bull mix looks like. So, what may be a violation to Officer Pelzl may not be a violation to Officer Wade, and the animals Officer Pelzl finds to violate the ordinance may not have any ancestry related to a banned breed. This is the "moment-to-moment

judgment" based on an officer's "personal predilections" that due process prohibits. *Kolender*, 461 U.S. at 358. Because the Pit Bull Ban fails to "provide minimal requirements to guide law enforcement," it allows for arbitrary, inconsistent, and discriminatory enforcement.  Thus, as a matter of law, the Pit Bull Ban fails to satisfy the vagueness requirement of due process. Accordingly, the Williston Pit Bull Ban is unconstitutionally vague and violates the Due Process Clause of the Constitution.

## **CONCLUSION**

Plaintiffs respectfully request this Court grant their Motion for Partial Summary Judgment.

Dated this 29th day of June 2022.

> BRANDY SUCKLEY, REANNAN SUCKLEY, JYL ALBERTSON, MATHEW BAUMSTARK, DANIKA OWAN, LYNETTE COLE-PEREA, MANUAL PEREA, and EMILY HOLLY, Plaintiffs
>
> BY: */s/ Gene Summerlin*
> V. Gene Summerlin – NE #19611
> Ryann A. Glenn – NE # 26160; IA#AT0010530
> Amanda L. Wall – NE #26872
> Sydney L. Hayes – NE #27051
> HUSCH BLACKWELL LLP
> 13330 California St., Suite 200
> Omaha, NE 68154
> (402) 964-5000
> (402) 964-5050 (fax)
> gene.summerlin@huschblackwell.com
> ryann.glenn@huschblackwell.com
> amanda.wall@huschblackwell.com
> sydney.hayes@huschblackwell.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of June 2022, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF System, which served notice on all parties of record.

> Brian D. Schmidt
> Scott K. Porsborg
> SMITH PORSBORG SCHWEIGERT
> ARMSTRONG MOLDENHAUER & SMITH
> 122 East Broadway Avenue
> P.O. Box 460
> Bismarck, ND 58502-0460
> bschmidt@smithporsborg.com
> sporsborg@smithporsborg.com


> */s/ Gene Summerlin*