IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

Case No: 1:21-cv-00012

| | | |
|---|---|---|
| Brandy Suckley, Reannan Suckley, Natasha Calderon, Shoghi Farr, Blake Ish, Jyl Albertson, Mathew Baumstark, Danika Owan, Doc Ritchie, Lynette Cole-Perea, Manuel Perea, Emily Holly, and Bryan Fleming, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | **DEFENDANT, CITY OF WILLISTON'S, MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| vs. | ) ) | |
| The City of Williston, North Dakota, | ) ) | |
| Defendant. | ) | |

***                    ***                    ***

## I.    INTRODUCTION

The Plaintiffs' motion for summary judgment requests the Court find § 4-89 unconstitutionally vague despite the robust consensus of authority holding that "Ordinances identifying the American Pit Bull Terrier, Staffordshire Bull Terrier, and American Staffordshire Terrier as 'pit bulls,' or any dog with such characteristics as predominant, and dogs identifiable as having any pit bull variety as an element of their breeding, **are not unconstitutionally vague**." 3B C.J.S. Animals § 19 (emphasis added).

On July 5, 2022, the Eighth Circuit made it crystal clear that when there is no First Amendment interest, the Court is prohibited from entertaining a facial challenge to an ordinance. Nygard v. City of Orono, -- 4th --, 2022 WL 2431593 at *2 (8th Cir. July 5, 2022). As in Nygard, "[h]ere, there is no First Amendment interest that would justify deviating from the rule requiring as-applied challenges." Id.

The Plaintiffs' motion does not discuss the facts as related to any of the remaining named Plaintiffs. Rather, it focuses on hypothetical scenarios involving dogs who are not owned by any of the named Plaintiffs. As explained below, this is impermissible in a vagueness challenge. Further, the Plaintiffs ignore the plain language of the ordinance and ignore the fact the City offers DNA tests - at its own expense - to verify the dog's breed. Doc. No. 73 at ¶ 12. Additionally, the Plaintiffs ignore that a DNA test has never conflicted with a City officer's visual identification of a dog which led to a citation. See Doc. No. 67 at ¶ 7.

Instead, the Plaintiffs' motion relies upon a cherry-picked assortment from a photographic "pop quiz" they provided to the City's CSO's at their depositions. Put simply, the Plaintiffs apply the wrong legal standard and fail to establish any grounds entitling them to judgment as a matter of law on their vagueness claim.

## II.    RELEVANT FACTS

The relevant facts of this case were explained at length in the City's Memorandum in Support of its Motion for Summary Judgment and are incorporated herein. See Doc. No. 64. The only facts not previously provided to the Court are the testimony and exhibits from the depositions of Brandy Suckley, Lynette Cole-Perea, and Jyl Albertson. For the purpose of readability and clarity, the relevant deposition testimony that supplements the facts already provided to the Court will be explained in the context of the as-applied analysis below. As explained in the City's initial motion for summary judgment, there is no dispute of material fact and this case is ripe for summary judgment in the City's favor and the Plaintiffs' motion must be denied.

### III.    LAW AND ARGUMENT

The Plaintiffs' motion seeks the Court hold § 4-89 void for vagueness.  Each remaining named-Plaintiffs' claim must be dismissed because they: 1) are foreclosed from challenging § 4-89 as a matter of law due to a previous guilty plea; 2) lack standing to assert a challenge to the ordinance, or 3) cannot show the ordinance was unconstitutionally vague as to their conduct.

### A.    The Plaintiffs vagueness challenge must be an as-applied challenge under Eighth Circuit Precedent.

"When reviewing for vagueness, we first determine if a statute is vague as applied to the [plaintiff's] conduct, and only if it is will we consider whether a statute is facially unconstitutional. This is because a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  United States v. KT Burgee, 988 F.3d 1054, 1060 (8th Cir. 2021) (internal citations and quotations omitted).  The Eighth Circuit recently clarified that "a vagueness challenge to [a] statute which does not involve First Amendment freedoms must be examined in light of the facts of the case at hand."  Nygard v. City of Orono, --F.4th--, 2022 WL 2431593, at *2 (8th Cir. July 5, 2022) (quoting United States v. Orchard, 332 F.3d 1133, 1138 (8th Cir. 2003).

The Plaintiffs' motion for summary judgment makes absolutely no attempt to argue that the City's pit-bull ordinance was unconstitutionally vague as applied to any of the named Plaintiffs. As in Nygard, "[h]ere there is no First Amendment interest that would justify deviating from the rule requiring as-applied challenges." Nygard, 2022 WL 2431593 at *2.  Under an as-applied challenge, "if the statute gave adequate warning, under [the [plaintiffs']] specific set of facts, that the [plaintiffs'] behavior was a criminal offense, then the statute is not vague." KT Burgee, 988 F.3d at 1060.

Under binding law, the Court must determine if § 4-89 is vague as applied to the Plaintiffs' conduct.  KT Burgee, 988 F.3d at 1060.  Since § 4-89 does not implicate a First Amendment freedom, there can be no facial challenge to the ordinance.  Nygard, 2022 WL 2431593 at *2-3; see also Gallagher v. City of Clayton, 699 F.3d 1013, 1015, 1021-22 (8th Cir. 2012) (holding that a facial challenge to a smoking ordinance was not properly before the Court because "smoking does not implicate the First Amendment on these alleged facts.");  Geyer Signal Inc. v. Minnesota Dept. of Transp., 2014 WL 1309092 at * 17 (D. Minn. March 31, 2014) ("the Eighth Circuit has held that courts need not consider facial vagueness challenges based upon constitutional grounds other than the First Amendment.")  Therefore, the Court must only consider the Plaintiffs' vagueness claims as an "as-applied" challenge.

>    1.    The Plaintiffs who entered into a guilty plea for violation of § 4-89 cannot assert an "as-applied" challenge to the ordinance as a matter of law.

The following Plaintiffs have all pled guilty to a violation of § 4-89:  Reannan Suckley (Doc. No. 73-11); Jyl Albertson (Doc. No. 73-17); Mathew Baumstark (Doc. No. 73-25); and Emily Holly (27-3).  It is well-settled in the Eighth Circuit that "'[a]s-applied challenges to the constitutionality of a statute'…are consequently 'foreclosed by [a] guilty plea.'" U.S. v. Jacobson, 406 Fed. Appx. 91, 92 (8th Cir. 2011) (Per Curiam) (quoting United States v. Seay, 620 F.3d 919, 922 n.3 (8th Cir. 2010).  Therefore, these Plaintiffs cannot bring an "as-applied" challenge to § 4-89 as a matter of law.  Further, under the recent clarification explained in Nygard, the Eighth Circuit prohibits facial vagueness challenges to statutes that do not invoke the First Amendment. Nygard, 2022 WL 2431593 at *2 (8th Cir. July 5, 2022).  As a result, Reannan Suckley, Albertson, Baumstark, and Holly's vagueness challenges must be dismissed as a matter of law.

2. *Owan and the Pereas lack standing to assert an as-applied challenge to §
4-89.*

Danika Owan, Manuel Perea, and Lynette Cole-Perea – who did not enter a guilty plea and
have never received a citation for violation of § 4-89 – lack standing to assert an as-applied
challenge to § 4-89 based on the facts of their case.  Put simply, they cannot establish an on-going
or immediate threat of injury as required for standing.

"Standing to challenge a statute or ordinance as applied is present when the challenger has
experienced a direct injury or will soon sustain a direct injury redressable by the court." Harmon
v. City of Kansas City, Mo., 197 F.3d 321, 326 (8th Cir. 1999).  To establish standing the Plaintiffs
must show their "alleged injury is not too speculative for Article III purposes – that the injury is
'*certainly* impending.'  'Allegations of *possible* future injury' are not sufficient." Balogh v.
Lombardi, 816 F.3d 536, 541 (8th Cir. 2016) (emphasis in original) (internal quotations omitted).
"The mere fact that injurious activity took place in the past does nothing to convey standing to
seek injunctive relief against future constitutional violations." Harmon v. City of Kansas City,
Mo., 197 F.3d 321, 327 (8th Cir. 1999).  "In a case of this sort, where the plaintiffs seek declaratory
and injunctive relief, past injuries alone are insufficient to establish standing.  Rather, [the plaintiff]
must show he is suffering an ongoing injury or faces an immediate threat of injury." Frost v. Sioux
City, Iowa, 920 F.3d 1158, 1162 (8th Cir. 2019) (quoting Dearth v. Holder, 641 F.3d 499, 501
(D.C. Cir. 2011).  Under this binding precedent, Danika Owan and the Pereas, lack standing to
assert an as-applied challenge as explained below:

a.   Danika Owan lacks standing to assert an as-applied challenge.

The facts related to Owan are sparce, but damming for her claim.  Owan lived with
Baumstark for approximately 6 years.  Doc. No. 66-7 at p. 2.  She has never been cited for violation
of § 4-89.  Doc. No. 66-8 at p. 2.  After Baumstark received his citation for violation of § 4-89 and

entered a guilty plea to the offense (Doc. No. 73-25), Owan made the decision to euthanize Brutus who was verified by a DNA test to be a prohibited breed.  <u>See</u> Doc. No. 66-7 at pp. 3-4; Doc. No. 73-24; Doc. No. 73-27.  She currently owns two King Charles Spaniels which are not prohibited by § 4-89.  <u>See</u> Doc. No. 66-7 at p. 8; Doc. No. 27-6 at p. 1.  Clearly, Owan's alleged past injury (euthanizing her dog subsequent to Baumstark's § 4-89 guilty plea) is "insufficient to establish standing" to seek declaratory and injunctive relief and she cannot show she "is suffering an ongoing injury or faces an immediate threat of injury" required to establish standing to challenge § 4-89.  <u>Frost</u>, 920 F.3d at 1162.  By her own admission, she does not own a dog of a prohibited breed at this time and therefore lacks standing to assert an as-applied challenge.  <u>See Id</u>. at 1161 ("Standing must persist throughout all stages of litigation.")  Therefore, Owan is not entitled to summary judgment, and her claim must be dismissed.

> b. <u>Lynette Cole-Perea and Manuel Perea lack standing to assert an as-applied challenge to § 4-89.</u>

Lynette and Manuel are a married couple who live within the City of Williston.  Doc. No. 66-5 at p. 3.  They believe their dog, Raw-Koe, is an American Staffordshire Terrier.  <u>Id</u>. at p. 7. Per their Complaint, Raw-Koe is a service animal for Mr. Perea.  Doc. No. 1, p. 13 at ¶ 85. As explained in prior briefing, § 4-89 does not prohibit the possession of a service animal within the City Limits.  Doc. 73 at ¶ 53; Doc. No. 73-34.

The Pereas had an encounter with the Williston Police Department on September 10, 2020, and the incident report from this encounter provides the following:

> Officer Cruise mentioned Manuel's dog being a pit bull. Manuel advised that it was a service animal and provided Officer Cruise with the service animal card. Officer Cruise had a name note attached to Manuel about the dog being a service animal for any future contacts with him.

Doc. No. 73-29 at p. 4.

Further, the Pereas have never received a citation for violation of § 4-89.  Doc. No. 66-2 at p. 2; Doc. No. 66-3 at p. 2.

If the allegations in ¶ 85 of the Pereas' Complaint are taken as true, and Raw-Koe is a certified service animal for Mr. Perea, they lack standing to state an as-applied challenge because they cannot state facts that establish a direct injury or they "will soon sustain a direct injury redressable by the court."  Harmon, 197 F.3d at 326 (8th Cir. 1999).  In fact, as shown above, the City placed a note about the dog being a service animal in the event of future contacts.  Doc. No. 73-29 at p. 4.   Any allegations of possible future injury are not sufficient to establish Article III standing and they certainly cannot establish any ongoing direct injury as a result of the enforcement of § 4-89; therefore, they lack standing to assert an as-applied challenge to the ordinance.  See Harmon, 197 F.3d at 326; Balogh, 516 F.3d at 541; Frost, 920 F.3d at 1162.

### 3.    *All Plaintiffs' vagueness challenges fail on their merits.*

Notwithstanding the above hurdles to the Plaintiffs' claims, a vagueness challenge "must be examined in light of the facts of the case at hand."  Nygard, 2022 WL 2431593 at *2.  If § 4-89 gave adequate warning to the Plaintiffs' specific set of facts that their behavior was a criminal offense, the statute is not vague as a matter of law.  KT Burgee, 988 F.3d at 1060.  Section 4-89 provides the following:

> It shall be unlawful to keep, harbor, own or in any way possess within the corporate limits of the City of Williston, North Dakota, any pit bull dog; provided, that pit bull dogs registered with the City on or before the first day of March, 1987 may be kept within the City subject to the standards and requirements set forth in § 4-90 of this article. "Pit bull dog" is defined to mean:
>
> (a)    The bull terrier breed of dog.
> (b)    Staffordshire bull terrier breed of dog;
> (c)    The American pit bull terrier breed of dog;
> (d)    The American Staffordshire terrier breed of dog;
> (e)    Dogs of mixed breed or of other breeds than above listed which breed or mixed breed is known as pit bulls, pit bull dogs or pit bull terriers;

- 7 -

(f)    Any dog which has the appearance and characteristics of being predominantly of the breeds of bull terrier, Staffordshire bull terrier, American pit bull terrier, American Staffordshire terrier, any other breed commonly known as pit bulls, pit bull dogs or pit bull terriers, or a combination of any of these breeds.

Doc. No. 27-6 at p. 1.

This ordinance clearly provides adequate warning under each Plaintiffs' specific set of facts that their behavior was a criminal offense. The specific facts relating to each Plaintiff and the application of § 4-89 will be explained below in the order they are listed in the case caption:

a.    <u>The ordinance as-applied to Brandy Suckley is not vague.</u>

Brandy Suckley is the mother of Reannan Suckley. Doc. No. 66-6 at p. 2. She has never received a citation for violation of § 4-89. <u>Id</u>. Reannan was cited for possession of a pit bull within the City's limits on February 10, 2020, after her dog Duchess was found as a stray. Doc. 73-2; Doc. 73-4. Brandy and her husband hired an attorney for Reannan to fight the citation. *Affidavit of Brian D. Schmidt* ("*Schmidt Aff'd.*"), Exhibit # 1 at p. 7:5-8. Reannan's attorney submitted a notice of appearance to defend her on February 14, 2020. Doc. No. 73-6. A DNA test confirmed Duchess was 100% American Staffordshire Terrier on February 27, 2020. Doc. No. 73-9. By letter dated March 4, 2020, Reannan submitted a notarized letter which provided: "I acknowledge that my dog is the type of breed that is prohibited in the City of Williston." Doc. 73-10. Reannan entered a guilty plea which provided "I am pleading guilty because on February 10, 2020, in the City of Williston, I was in possession of an American Staffordshire Terrier breed of dog within the city limits." Doc. No. 73-11 at p. 1. Her plea was accepted, she was assessed a fine of $350 which was paid on March 12, 2020. Doc. No. 73-12; Doc. 73-13 at p. 2. Brandy paid Reannan's fine. *Schmidt Aff'd.,* Exhibit # 1 at p. 7:24-25.

When asked specifically about this lawsuit, Suckley provided the following testimony:

Q. In this lawsuit that you're a named plaintiff in, it's my understanding that you're asking the Court to declare the City of Williston's pit bull ordinance to be unconstitutional. Is that fair? Do you know?

**A. Yes.**

Q. If you were ultimately to prevail in this lawsuit, how would it impact you personally?

**A. Prevail, as in "win"?**

Q. Yes. Court agrees with you. How -- how does it impact you personally?

**A. Personally, my daughter would be able to visit more often. She would have be -- she would have been able to have her dog at my house. If I wanted to have another dog, I could. I wouldn't have to be looking over my shoulder, scared, or anything to that if I wanted to have another dog, if, you know --**

Q. Well, you can have another dog in the city; right?

**A. If I wanted a dog of my choice.**

Q. If you were to go buy another dog, knowing that the ordinance reads as it does -- Section 4-89 is what I mean -- if you were to go buy another dog, could you have it DNA-tested before you brought it into the city of Williston?

**A. Anybody can have their dogs DNA-tested, so yeah.**

Q. Sure.
   So when you go and pick out a dog, you can have a test completed that tells you the breed percentage; right?

**A. Yeah.**

Q. And then if ever you were challenged on whether your dog was a pit bull or not, you could present the officer with that DNA test, couldn't you?

**A. You could.**

Q. Or you could present that evidence to the Court, couldn't you?

**A. You could.**

Q. And, presumably, you would have a defense to the allegation; right?

**A. You -- yeah.**

Q. And there's no requirement that people have a dog, is there?

**A. No, there's not a requirement.**

Q. It's a choice; right?

**A. It is a choice.**

Q. Why do you believe the City's pit bull ordinance is invalid?

**A. My opinion?**

Q. Your opinion.

**A. It limits people of -- to have the dogs of their choice. It restricts animal -- dogs of their breed -- you know, the breed. It just kind of is, like, discriminating on breeds. Pit bull's not really -- my opinion, pit bulls aren't any other -- any different than any other dog. So I feel like people should have a choice, and I think it – it just restricts that.**

Q. Okay. Do you know if other people disagree with your opinion that pit bulls are not more dangerous than other dogs?

**A. I'm sure there are.**

*Schmidt Aff'd.,* Exhibit # 1 at pp. 50:9-52:23.

Brandy's testimony on this issue was not that the ordinance was vague, but rather that it discriminates against pit bulls.  She admitted that under the existing ordinance, she could have a dog DNA tested to ensure it does not violate § 4-89 prior to bringing it into the City.  To her credit, Brandy's testimony is consistent with the Supreme Court of Colorado which held, "[s]ince the standards for determining whether a dog is a pit bull are readily accessible to dog owners, and because most dog owners are capable of determining the breed or phenotype of their dog, the trial court properly determined that the ordinance provides adequate notice to dog owners and is not unconstitutionally vague."  Colorado Dog Fanciers, Inc. v. City and County of Denver By and Through City Council, 820 P.2d 644, 652 (Colo. 1991) (en banc)[1].  Further, as explained in Vanater v. Village of South Point, "[a] resident in the Village of South Point who owns or is considering acquiring a Pit Bull need only look at the explicit prohibition of that breed in the law to realize that he or she cannot do so." 717 F.Supp. 1236 (S.D. Ohio 1989) at p. 1243.

Further, Suckley's testimony makes it clear that she believes prevailing in this litigation would allow her to have "a dog of [her] choice."  *Schmidt Aff'd.,* Exhibit # 1 at pp. 50:18-51:4. She did not testify that she was precluded from having any dog because the statute – as-applied to her conduct – fails to provide her adequate notice as to what is or is not banned within the City

---

[1] The ordinance in Colorado Dog Fanciers, Inc. prohibited possession of "[a]ny dog that is an American Pit Bull Terrier, American Staffordshire Terrier, Staffordshire Bull Terrier, or any dog displaying a majority of physical traits of any one or more of the above breeds…." Id. at pp. 646-47.

limits[2].  Suckley admitted she could procure a DNA test to determine whether a dog was a prohibited breed.  She simply just disagrees with the wisdom of the ordinance.  These are not adequate grounds to find an ordinance vague within the meaning of the Constitution -  especially in light of the fact that she hired an attorney to fight Reannan's citation and paid the fine after Reannan pled guilty to the offense with the consent of the counsel she hired to defend her.  See *Schmidt Aff'd.,* Exhibit # 1 at p. 7; Doc. No. 73-11.  Where a plaintiff "had the requisite notice that the [pit bull] ordinance prohibited their activities, the ordinance is not vague as applied to them." Garcia v. Village of Tijeras, 767 P.2d 355, 358 (N.M. Ct. App. 1988) (holding an ordinance that banned "the ownership or possession of a breed of dog 'known as American Pit Bull Terrier'" was not void for vagueness).  Clearly, based on the undisputed facts, § 4-89 is not vague as applied to Brandy Suckley's conduct.

   b.   The ordinance as applied to Reannan Suckley is not vague.

As explained above, Reannan cannot challenge § 4-89 for vagueness because she entered a guilty plea in response to her citation.  See Jackson, 406 Fed. Appx. at 92 (8th Cir. 2011).  Even if this did not foreclose her claim as a matter of law, the undisputed facts of her case clearly show the ordinance was not vague as applied to her.  In fact, she specifically admitted "I acknowledge that my dog is the type of breed that is prohibited in the City of Williston."  Doc. No. 73-10.  It is well-settled that if a statute gave adequate warning that her behavior was a criminal offense, then the statute is not vague.  KT Burgee, 988 F.3d at 1060.

---

[2] Notably, Suckley also testified that she now harbors Reannan's dog that was subject to her citation and guilty plea.  *Schmidt Aff'd.,* Exhibit # 1 at pp. 10:17-11:3.  However, based on the allegations in the Complaint, this dog "is now a certified service animal for Reannan, who is diabetic."  Doc. 1 at p. 7, ¶ 40.  As explained above, service animals are not prohibited within the City Limits.  If ¶ 40 of the Complaint is taken as true, Brandy lacks standing as there is no imminent threat of harm to her.  See Harmon, 197 F.3d at 326 (8th Cir. 1999).

c.      <u>The ordinance as applied to Jyl Albertson is not vague.</u>

Again, Albertson cannot challenge § 4-89 for vagueness because she entered into a guilty plea in response to her citation.  <u>See</u> <u>Jackson</u>, 406 Fed. Appx. at 92 (8th Cir. 2011).  Further, the ordinance was clearly not void for vagueness as-applied to Albertson's conduct.  Albertson's § 4-89 citation was secondary to a moving traffic violation within the City Limits.  Doc. No. 73-14.  She described the encounter with the officer as follows:

> Q.  Okay. And were you pulled over because of an alleged traffic infraction?
> **A.  Apparently, it was – it's a lifted truck, and the muffler is loud, so that's why I got pulled over.**
> Q.  Okay. So what happened after the officer pulled you over?
> **A.  She said, "The muffler's too loud. The truck's too high," I believe. And when she came up to the door, she said, "Is that a pit bull?" <u>And I said, "Yes."</u> And she said, "Well, you're getting a citation for having a pit bull in city limits. And I said, "Okay."**

*Schmidt Aff'd.,* Exhibit # 2 at pp. 15:19-16:7 (emphasis added).

Notably, the veterinarian information Albertson provided through discovery indicates the subject dog, Gunner, was identified as an "AM PIT BULL TER/AMERICAN STAFF" in prior registration documents with Maricopa County, Arizona.  *Schmidt Aff'd.,* Exhibit # 3. Notwithstanding the fact Albertson pled guilty to violating § 4-89, the plain language of the ordinance clearly provided her notice that her dog was a prohibited breed.  Therefore, her "as-applied" challenge would fail even if it were not precluded by her plea of guilty.

d.      <u>The ordinance as applied to Mathew Baumstark is not vague.</u>

As with the others who entered a guilty plea, Baumstark cannot challenge § 4-89 for vagueness.  <u>See</u> <u>Jackson</u>, 406 Fed. Appx. at 92 (8th Cir. 2011).  However, even if Baumstark had not pled guilty, his as-applied claim would still be meritless. After receiving his citation, Baumstark requested a DNA test be conducted on the subject dog, Brutus.  Doc. No. 73 at ¶ 38; Doc. No. 73-23.  The DNA test confirmed that Brutus was a prohibited breed under § 4-89.  Doc.

No. 73 at ¶ 39; Doc. No. 73-24.  Baumstark pled guilty to a violation of § 4-89.  Doc. No. 73-25.

Again, under these facts, § 4-89 clearly placed him on notice that his conduct was in violation of

the law; therefore, his as-applied challenge must fail.

e.   The ordinance as applied to Danika Owan is not vague.

As explained above, Owan has never been cited for a violation of § 4-89.  She was the

owner of Brutus and voluntarily elected to euthanize Brutus after Baumstark entered his guilty

plea and her dog was identified as a prohibited breed. See Doc. No. 66-7 at pp. 3-4; Doc. No. 73-

24; Doc. No. 73-27. While she clearly lacks standing, as explained above, she also cannot establish

any facts which show the ordinance is vague as to her conduct.  Specifically, she presently owns

two dogs which are not prohibited by § 4-89.  See Doc. No. 66-7 at p. 8; Doc. No. 27-6 at p. 1.

The record lacks any facts establishing § 4-89 is vague as applied to her conduct.

f.   The ordinance is not vague as-applied to Lynette Cole-Perea and
Manuel Perea's conduct.

As explained above, the Pereas are a married couple whose dog has already been

recognized as a service animal within the exception to § 4-89 and they have never been cited for a

violation of the ordinance.  Doc. No. 66-2 at p. 2; Doc. No. 66-3 at p. 2; Doc. No. 73-29 at p. 4.

While they lack standing to challenge the ordinance, their claim fails on its merits as an as-applied

challenge.  Interestingly, Cole-Perea's deposition testimony made it clear that on October 22, 2019,

Lynette completed a witness statement with respect to a pair of puppies who were bred by their

dog – Raw-Koe – which provides the following:

> On Thursday Oct 17, 2019 after being told there were 2 pit bull pups down at the
> Williston PD pound, my daughter and I went down to see if we could get them out
> and take them to my oldest daughter in Colorado where they are legal.
> …
> I practically begged the officers to please let me just get the puppies out so I could
> take them to Colorado where my daughter lives because they are legal there.  They
> told me I could if I took the 2 misdemeanor arrestable charges and the 2 $750.00

fines.  I could not take that because I have children at home I still have to take care
of.

*Schmidt Aff'd.,* Exhibit # 4 at pp. 22:15-24:13; Exhibit # 5 at pp. 4-5.

Clearly, Cole-Perea's written statement establishes she had adequate notice that pit bulls
were banned within the City Limits.  In fact, it was so clear to her that she attempted to remove
the dogs from the City Limits herself and then decided not to do so because she did not want to
receive a fine.  Clearly, under the applicable facts, the Pereas cannot establish that § 4-89 was
unconstitutionally vague.

g.    The ordinance is not vague as-applied to Emily Holly.

Again, because Holly entered a guilty plea, the court accepted the plea, and judgment has
been entered (Doc. No. 27-2, 27-3, 27-4, 27-5), she cannot now claim the ordinance is vague as
applied to her.  See Jackson, 406 Fed. Appx. at 92 (8th Cir. 2011).  After Holly received her citation,
the City Attorney "offered Holly the opportunity to have a DNA test conducted upon her dog to
determine its breed at the City's expense."  Doc. No. 27 at ¶ 4.  However, instead of accepting the
City Attorney's "offer to have her dog's DNA tested, Holly instead chose to plead guilty…."  Id.
at ¶ 5.  As with the others, there are no grounds upon which Holly can argue the ordinance was
vague as to her conduct.  Even when she was expressly offered the opportunity to have her dog's
DNA tested at the City's expense, she refused the offer and pled guilty to violating § 4-89.  She
cannot now complain the ordinance is unconstitutionally vague as applied to her.

**B.     The Evidence Supplied in Support of the Plaintiffs' Motion is wholly
Irrelevant.**

It is well-established that "property in dogs…may be subjected to peculiar and drastic
police regulations by the state without depriving their owners of any federal right."  Lunon v.
Bostford, 946 F.3d 425, 430 (8th Cir. 2019).  Consistent with the rule in the Eighth Circuit, other

- 14 -

federal district courts have held that "[o]wnership of a dog does not implicate any fundamental right." American Canine Foundation v. City of Aurora, Colo., 618 F.Supp.2d 1271, 1278 (D. Colo. 2009); See also Vanater, 717 F.Supp. at 1243 ("dog ownership is not considered one of the cherished rights which the Court must carefully protect."); Weigel v. Maryland, 950 F.Supp. 2d 811, 835 (D. Md. 2013) ("The right to own and keep dogs is not fundamental.").  As explained above, the Eighth Circuit recently clarified that a facial challenge cannot be made to a statute that does not implicate the First Amendment.  Nygard, 2022 WL 2431593 at *2.  Put another way, "the Eighth Circuit has held that courts need not consider facial vagueness challenges based upon constitutional grounds other than the First Amendment." Geyer Signal Inc., 2014 WL 1309092 at * 17 (D. Minn. March 31, 2014).  Clearly, ownership of a dog – especially an ordinance which restricts the type of dog which can be owned – does not implicate the First Amendment.  Therefore, it is inappropriate to consider a facial challenge to § 4-89.  See Nygard, 2022 WL 2431593 at *2; Gallagher, 699 F.3d at 1015, 1021-22; Geyer Signal Inc., 2014 WL 1309092 at * 17.

> 1.    *Even if a facial challenge were permissible, the City's ordinance clearly passes constitutional scrutiny.*

Nonetheless, the Plaintiffs entire argument is centered around the City's CSO's inability to specifically identify whether a dog is a "pit bull" by taking a pop quiz where a variety of dog pictures were shown to them at their depositions.  These pictures were copies "of dog photographs and their accompanying Embark DNA test results that were obtained from dog owners' that submitted DNA to Embark for analysis or from DNA test results that Embark made publicly available." Doc. No. 81-7 at ¶ 9.  There is absolutely no evidence – and the Plaintiffs do not argue – their dogs were included in any of these pictures or that any of these dogs exist within the City of Williston.  This is undoubtably an impermissible facial challenge to the ordinance.  See KT Burgee, 988 F.3d at 1060 (8th Cir. 2021) (a facial challenge considers the vagueness of the law as

applied to the conduct of others); Nygaard, 2022 WL 2431593 at * 2 (prohibiting facial challenges to statutes that do not invoke the First Amendment).   Further, they argue "the Pit Bull Ban fails to inform an individual or ordinary intelligence of the characteristics that make a dog illegal because it includes dogs like Gamma[3], which do not look like a banned breed…."  Doc. No. 81 at pp. 14-15.  "Gamma" is not one of the Plaintiffs' dogs and the Plaintiffs attempt to illustrate their point by impermissibly alleging uncertainty in the application of § 4-89 to hypothetical parties. This type of argument has been flatly rejected in vagueness challenges to pit bull ordinances.  In Garcia v. Village of Tijeras, the court specifically held:

> As we noted above, plaintiffs attempt to attack the ordinance by pointing out that it is vague as it might be applied to owners of mixed breeds of dog or to other dog owners who have no knowledge that their dog may be "known as [an] American Pit Bull Terrier." This attack is not germane to the inquiry here. **A statute is not void for vagueness when a purely facial attack is made alleging uncertainty in its application to hypothetical parties.** *Gallaher v. City of Huntington,* 759 F.2d 1155 (4th Cir.1985). "A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982) (footnote omitted).

767 P.2d 355, 358 (N.M. Ct. App. 1988) (emphasis added).

The Plaintiffs' attempt to show § 4-89 is facially vague by relying on purely hypothetical scenarios based on random photographs of dogs is completely irrelevant to the vagueness doctrine. Even if the Plaintiffs could state a facial challenge – which they cannot do – they would have to "establish that no set of circumstances exist under which [the ordinance] would be valid." Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678, 685 (8th Cir. 2012) (alteration in original)

---

[3] Gamma is the dog found at Doc. No. 81-7 at p. 11 and was one of the copies of "dog photographs and their accompanying Embark DNA test results that were obtained from dog owners' that submitted DNA to Embark for analysis or from DNA test results that Embark made publicly available."  Doc. No. 81-7, p. 2 at ¶ 9.

(quotation omitted).  Clearly, here the evidence shows the ordinance was properly applied to numerous plaintiffs who admitted they owned a prohibited breed.

Further, the Plaintiffs also argue § 4-89 is unconstitutional because it requires officers in the field to use their judgment to determine whether a dog is a pit bull.  "The mere fact that a person's conduct must be subjectively evaluated by a police officer to determine if that person has violated a statute does not make that statute unconstitutionally vague. If this were so, most criminal statutes would be void for vagueness." State v. Maciolek, 676 P.2d 996, 1000 (Wash. 1984) (en banc). Specifically, an ordinance banning possession of "pit bulls, specifically the breeds Bull Terrier, American Pit Bull Terrier, Staffordshire Bull Terrier, and American Staffordshire Terrier, as well as dogs 'identifiable' as having any pit bull variety as an element of their breeding" was held not to be vague merely "because it requires subjective evaluations by an officer." American Dog Owners Ass'n v. City of Yakima, 777 P.2d 1046, 1047-1048 (Wash. 1989) (en banc).  This is because "if a general class of offenses to which the statute is directed is plainly within its terms, the statute will not be struck down as vague though marginal cases could be put where doubts might arise.  And if this general class of offenses can be made constitutionally definite by a reasonable construction of the statute, this Court is under a duty to give the statute that construction." U.S. v. Harriss, 347 U.S. 612, 618 (1954).

Here, the ordinance clearly prohibits the possession of a "pit bull dog" within the City Limits.  While courts have found this alone is sufficient to satisfy constitutional requirements[4], the City's ordinance goes a step further and defines the term "pit bull dog" by identifying specific prohibited breeds. Again, even if a facial challenge were permissible – which it clearly is not in

---

[4] See City of Lima v. McFadden, 1986 WL 7474, at *1-2 (Ohio Ct. App. June 30, 1986) which held an ordinance which prohibited more than 1 "pit bull dog" was "not vague or indefinite."

the Eighth Circuit – § 4-89 clearly passes constitutional scrutiny.  See 3B C.J.S. Animals § 19.  An

almost identical definition of pit bull was found constitutional against a facial challenge in Dog

Federation of Wisconsin, Inc. v. City of South Milwaukee, 504 N.W.2d 375 (Wisc. Ct. App. 1993.

> In Federation of Wisconsin, the ordinance at issue defined "pit bull" as follows:
>
> Any pit bull terrier, which shall be defined as any American Pit Bull Terrier or
> Staffordshire Bull Terrier or American Staffordshire Terrier breed of dog, or any
> mixed breed of dog which contains as an element of its breeding the breed of
> American Pit Bull Terrier or Staffordshire Bull Terrier or American Staffordshire
> Terrier as to be identifiable as partially of the breed of American Pit Bull Terrier or
> Staffordshire Bull Terrier or American Staffordshire Terrier.

Id. at 359.

While Federation of Wisconsin was not subject to the Eighth Circuit's – now clear –

prohibition on reviewing non-First Amendment ordinances on a facial challenge, its rationale is

certainly illustrative as to why the Plaintiffs' claims lack merit.  In Federation of Wisconsin, the

Federation argued "an ordinary person would not be able to discern whether a dog is a 'pit bull'

as defined by the ordinance.  They point to the City of South Milwaukee's concession that such a

determination would require expert testimony at trial, and that no 'current city employee' would

be able to give that testimony."  Id. at 360.  The Federation also provided an expert affidavit

claiming in part that "non-experts would be unable to *accurately* determine whether a particular

dog was the 'pit bull' defined in the ordinance."  Id. at p. 378 (emphasis in original).  Notably, one

difference in Federation was the Federations' expert affirmed there was "no 'genetic method' to

determine a dog's breed" at the time.  Id.  This is clearly not the case with Williston as the City

offers an owner "the opportunity to have a DNA sample taken of the suspect dog at the City's

expense" when an owner disputes the City's initial determination.  Doc. 73 at ¶ 5.  Nonetheless,

even without DNA testing, the Federation court held that "**[r]eference to recognized breeds

provides sufficient specifics to withstand a vagueness challenge**."  Dog Federation of

Wisconsin, 504 N.W.2d at 379 (emphasis added).  Further, "whether a dog is within the ordinance 'is a matter of evidence, not constitutional law.'"  Id. at 364 (quoting State v. Peters, 534 So.2d 760, 768 (Fla Dist. Ct. App. 1988) ("Therefore, whether a dog is covered by the North Miami ordinance is a matter of evidence, not constitutional law."); see also Hearn v. City of Overland Park, 772 P.2d 758, 763-764 (Kan. 1989) ("whether a particular dog comes within the purview of the [pit bull] ordinance is a question of fact to be determined by the evidence."); City of Lima v. McFadden, 1986 WL 7474 at *1-2 (holding an ordinance which simply provides that "[n]o person shall keep or harbor more than one pit bull dog at his residence"  was "not vague or indefinite" and "[w]hether any particular animal falls within this classification is an issue of fact to be determined by the evidence presented.")  Consistent with this robust consensus of authority, the court in Federation of Wisconsin affirmed the district court's grant of summary judgment to the city on the Federation's constitutional challenges to its pit bull ordinance.  Dog Federation of Wisconsin, 504 N.W.2d at 369.

The Plaintiffs rely on Am. Dog Owners Ass'n, Inc. v. City of Lynn, 533 N.E.2d 642 (Mass. 1989) in support of their argument despite the fact it has absolutely no application to this case. Doc. No. 81 at p. 16.  First, City of Lynn was an advisory opinion.  City of Lynn, 533 N.E.2d at 645 ("Technically, therefore, this case is moot.  In order to conserve judicial resources and to guide future conduct of the parties, we make some observations concerning the fourth ordinance.")  This opinion would never be issued by a federal or North Dakota court.  See TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2203 (2021) ("federal courts do not issue advisory opinions."); Gary v. Berg, 2015 ND 203, ¶ 10, 868 N.W.2d 378 ("we do not issue advisory opinions.")  At best, the entire City of Lynn opinion is completely non-persuasive dicta.  Further, City of Lynn expressly notes its advisory opinion was construing the City's pit bull ordinance on a facial challenge.  City

of Lynn, 533 N.E.2d at 645-46.  Obviously, as explained above, a facial challenge cannot be made to a pit bull ordinance as it does not implicate the First Amendment.  Nygard, 2022 WL 2431593 at *2; Gallagher, 699 F.3d at 1021-22.  Even if a facial challenge were permissible, the advisory opinion in City of Lynn has been rejected numerous times.  See City of Yakima, 777 P.2d at 1048 ("We decline to follow Lynn."); Dog Federation of Wisconsin, Inc., 504 N.W.2d at 363-64 (declining to follow Lynn and noting it was merely dicta).  Put simply, City of Lynn has no precedential value here.

The same faults can easily be found with the Plaintiffs' reliance upon Am. Dog Owners Ass'n, Inc. v. City of Des Moines, 469 N.W.2d 416 (Iowa 1991).  As with City of Lynn, City of Des Moines was merely an advisory opinion.  City of Des Moines, 496 N.W.2d at 417 ("Initially, we note the question raised here may be moot…Nonetheless, we choose to address the question because it is a matter of public importance and is likely to recur.")  Further, City of Des Moines considered facial challenge – which is impermissible in the Eighth Circuit – to the challenged pit bull ordinance.  Id. at 417-19.  Further, this case has been rejected since it was issued.  See Dog Federation of Wisconsin, Inc., 504 N.W.2d at 363-64.  Additionally, and perhaps even more importantly, the state court's decision in City of Des Moines to entertain a facial challenge to a pit bull ordinance was flat out rejected by the federal court in Frost v. City of Sioux City, Iowa, where the district court dismissed the plaintiffs' facial vagueness challenge to the City's pit bull ordinance finding it failed to state a claim for unconstitutional vagueness.  2017 WL 4126986 at *11 (N.D. Iowa Sept. 18, 2017).

Even if a facial challenge were permissible – which it clearly is not – the City's ordinance would certainly pass constitutional scrutiny.  However, it is clear the Court need not entertain this argument as no First Amendment right is at stake.

2.      *The Plaintiffs cannot challenge the City's ordinance as under or overinclusive.*

To the extent the Plaintiffs' argument can be construed as arguing § 4-89 is overbroad or underinclusive, that argument must also fail. "Outside the limited area of fundamental constitutional rights such as, for example, first amendment rights of speech or association, a statute may not be attacked as overbroad."  Colorado Dog Fanciers, Inc. v. City and County of Denver By and Through Council, 820 P.2d 644, 650 (Colo. 1991) (en banc) (citing Schall v. Martin, 467 U.S. 253, 268 n. 18 (1984); Dandridge v. Williams  397 U.S. 471 (1970)).  Put another way:

> Furthermore, it does not appear that either the Supreme Court or the Eighth Circuit Court of Appeals has applied an over-inclusiveness or under-inclusiveness test to the constitutionality of an ordinance subject only to rational basis scrutiny rather than strict scrutiny or some form of heightened scrutiny. Indeed, the Eighth Circuit Court of Appeals has held that the fact that an ordinance banned some kinds of air pollution—specifically, smoking in public places—yet did not ban other possible air contaminants, did not mean that the ordinance failed rational basis review. See *Gallagher v. City of Clayton*, 699 F.3d 1013, 1019 (8th Cir. 2012). That decision and authority stating similar principles leads this court to conclude that over-inclusiveness and under-inclusiveness are irrelevant in the context of an ordinance subject only to rational basis review, *see Birchansky*, 955 F.3d at 758 ("A law supported by some rational basis does not offend the constitution merely because it is imperfect, mathematically imprecise, or results in some inequality.") (citing *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970)), and the dog owners concede that rational basis review is the applicable scrutiny, here. Thus, a challenge based on over-inclusiveness and under-inclusiveness is not legally cognizable.

Danker v. City of Council Bluffs, Iowa, 569 F.Supp.3d 866, 877 (S.D. Iowa 2021).

This makes sense as a legislative body "may deal with a problem one step at a time, addressing that part of the problem which seems most serious."  Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dept. of Public Welfare, 742 F.2d 442, 448 (8th Cir. 1994).  This was further explained by the Supreme Court of Washington as follows:

The Yakima ordinance is constitutional even though some inoffensive pit bulls might be banned. Overbreadth is only a problem when it " '... reaches a substantial amount of constitutionally protected conduct.' " *Huff*, 111 Wash.2d at 925, 767 P.2d 572 (quoting *Houston v. Hill*, 482 U.S. 451, 458, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398 (1987)). Dogs are subject to police power and may be destroyed or regulated to protect citizens. *See Sentell v. New Orleans & C. R.R.*, 166 U.S. 698, 704, 17 S.Ct. 693, 695, 41 L.Ed. 1169 (1897). Thus, "property in dogs is of an imperfect or qualified nature", *Sentell*, at 701, 17 S.Ct. at 694, and "a harmless or inoffensive American Pit Bull Terrier may be banned in order to abate the threat ... presented by other American Pit Bull Terriers". *Garcia v. Tijeras*, 108 N.M. 116, 124, 767 P.2d 355, 363 (1988).

City of Yakima, 777 P.2d at 1048 (en banc).

Further, with respect to under-inclusiveness, a pit bull "ordinance is also constitutional although it will not stop all dog bites nor remove unidentifiable pit bull mixes." Id. at p. 1048. Put simply, to the extent the Plaintiffs claim the City's pit bull ordinance is over or under inclusive, their argument must fail as a matter of law.

> 3. *The Plaintiffs' criticism of the City's training is irrelevant to the issues.*

The Plaintiffs' claim arises under § 1983. Doc. No. 1 at pp. 20-23. They devote substantial argument to the City's training practices for breed identification. "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that action pursuant to official municipal policy **caused their injury**." Connick v. Thompson, 563 U.S. 51, 60 (2011) (emphasis added) (quotation omitted). "In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. at 61. To satisfy a § 1983 claim, "a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact. Only then can such a shortcoming be properly thought of as a city policy or custom that

is actionable under § 1983." Id.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.  Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program."  Id.  Further, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train…Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."  Id. at p. 62.

While a failure to train claim is not alleged in the Plaintiffs' complaint, they devote much argument to the City's training procedures in their summary judgment brief.  The crux of their claim is that § 4-89 is unconstitutional; however, they point to absolutely no evidence showing the City's training process "caused their injury."  See Id. at 60.  In other words, the "plaintiff[s] must prove that the policy was the moving force behind a constitutional violation" which they simply cannot do here.  Marsh v. Phelps County, 902 F.3d 745, 752 (8th Cir. 2018).  As explained above, each of the named Plaintiffs either pled guilty to a violation of § 4-89 or have never received a citation for violating the ordinance.  They certainly cannot show the City's training policies were "the moving force behind a connotational violation" as required under § 1983.

Nonetheless, the City is certainly not devoid of resources to identify pit bull dogs.  CSO supervisor, Carli Wade, prepared training materials for § 4-89 which includes examples of animals which are and are not pit bulls.  Doc. No. 67 at ¶ 8; Doc. No. 67-1 at pp. 50-58.  The City also keeps "The Complete Dog Breed Book" in the CSO's office which can be used as a resource to

aid in the visual identification of a dog.  Doc. No. 67 at ¶ 9.  Further, the CSO's carry DNA swabs in the field to conduct DNA tests on dogs suspected to be a prohibited breed if requested to do so. Id. at ¶ 5.  After a DNA sample is obtained from a suspect dog, it is sent to Wisdom Panel ™ for testing and the results are provided to the City.  Id. at ¶ 6.  The City's rationale for utilizing DNA tests was explained by the City Attorney as follows:

> The City offers DNA tests to serve as a check against potential mistakes with visual identification only. If, prior to trial, it becomes my opinion that the evidence does not support that the City will be able to prove a violation of § 4-89 beyond a reasonable doubt, I will drop the charges. However, if it is my opinion the evidence supports that the City will be able to prove each element of § 4-89 beyond a reasonable doubt, I will proceed to trial absent a guilty plea.

Doc. No. 73 at ¶ 12.

In addition to the utilization of DNA testing to aid in prosecutorial discretion, a dog owner charged with a violation of § 4-89 "has all the same rights and procedures as any other criminal defendant within the State of North Dakota."  Doc. No. 73 at ¶ 13.  These rights and procedures were explained at length in the City's Memorandum in Support of Motion for Summary Judgment and that explanation is incorporated here.  Doc. No. 64 at pp. 14, 36-40.  Put simply, the City bears the burden to prove each element of § 4-89 beyond a reasonable doubt and suspected pit bull owners have the right to appeal.  See Eg. Doc. No. 73-5 at ¶ 7; see also N.D.C.C. §§ 40-18-15, 40-18-19, 29-01-12.

As explained above, "whether a dog falls within the ordinance is a matter of evidence, not constitutional law."  Dog Federation of Wisconsin, 504 N.W.2d at 364;  (quoting Peters, 534 So.2d at 768); See also Hearn, 772 P.2d at 763-64; City of Lima, 1986 WL 7474 at *1-2.  The City has numerous safeguards in place – including DNA testing of the dogs, a full-blown trial, and the right to appeal – that are all designed to serve as a check against potential mistakes with visual identification.  The combination of visual identification and DNA tests is "state of the art and

therefore as reliable as currently possible." Doc. No. 74-2 at p. 15. Against this background, the Plaintiffs cannot show that the City's policy – as it relates to the identification of dogs – renders § 4-89 unconstitutional.

## IV.    CONCLUSION

For the aforementioned reasons, the Plaintiffs' motion for partial summary judgment should be denied.

Dated this 20th day of July, 2022.

SMITH PORSBORG SCHWEIGERT
ARMSTRONG MOLDENHAUER & SMITH


By /s/ Brian D. Schmidt
Brian D. Schmidt (ND Bar ID #07498)
bschmidt@smithporsborg.com
Scott K. Porsborg (ND Bar ID #04904)
sporsborg@smithporsborg.com
122 East Broadway Avenue
P.O. Box 460
Bismarck, ND 58502-0460
(701) 258-0630

Attorneys for Defendant, The City of
Williston, North Dakota

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July, 2022, a true and correct copy of the foregoing **DEFENDANT, CITY OF WILLISTON'S, MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed electronically with the Clerk of Court through ECF, and that ECF will send a Notice of Electronic Filing (NEF) to the following:

V. Gene Summerlin                    gene.summerlin@huschblackwell.com
Ryann A. Glenn                      ryann.glenn@huschblackwell.com
Amanda L. Wall                   amanda.wall@huschblackwell.com
Sydney L. Hayes                   sydney.hayes@huschblackwell.com
Attorneys at Law
13330 California St., Suite 200
Omaha, NE 68154

By /s/ Brian D. Schmidt
BRIAN D. SCHMIDT